## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **YAPP USA AUTOMOTIVE SYSTEMS, INC.,** | |
| **Plaintiff,** | |
| **v.** | |
| **NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and ARTHUR AMCHAN in his official capacity as an Administrative Law Judge of the National Labor Relations Board,** | Case No. |
| **Defendants.** | |

## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiff YAPP USA Automotive Systems, Inc. ("YAPP") brings this action for declaratory and injunctive relief, alleging as follows:

### INTRODUCTION

1.    YAPP brings this suit for declaratory and injunctive relief against Defendants because Defendants are presently pursuing an unconstitutional administrative proceeding against it.

2.      YAPP will be able to demonstrate that it is entitled to injunctive and declaratory relief.

3.      First, YAPP is likely to succeed on the merits of its constitutional claims that: the NLRB's Board Members are unconstitutionally insulated from removal; the NLRB's administrative law judges ("ALJs") are unconstitutionally insulated from removal; YAPP is being deprived of its right to a jury trial regarding purely legal remedies sought by the NLRB; and the structure of the NLRB violates the separation of powers and YAPP's due process rights.

4.      Second, YAPP will show it is likely to suffer both economic and constitutional harms due to the damages sought against it and the very nature of the proceedings to which it may be subjected.

5.      Third, YAPP will demonstrate that the balance of equities tips in its favor because it stands to be stripped of its constitutional rights while Defendants stand to lose nothing.

6.      Fourth and finally, it is in the public's interest to establish constitutional proceedings.

7.      Because it is likely to succeed on the merits, YAPP respectfully requests this court grant its Motion for a Preliminary Injunction.

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction over this action pursuant to

28 U.S.C. § 1331. YAPP's claims arise under the Constitution and laws of the United States. YAPP alleges that certain aspects of the NLRB's structure violate the Constitution, and this Court has federal question jurisdiction to adjudicate this constitutional challenge.

9.     This Court has authority to grant declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and under the Court's inherent equitable powers.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B) because Defendants are officers of an agency of the United States and a substantial part of the events giving rise to the claim occurred in Romulus, Michigan.

## PARTIES

11.     YAPP is a Tennessee corporation that is a world class, Tier 1 automotive supplier specializing in design, engineering and manufacturing of automotive fuel system solutions. YAPP operates a facility at 36320 Eureka Road, Romulus, Michigan 48174.

12.     Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C. The National Labor Relations Act ("NLRA") empowers the NLRB to initiate administrative proceedings to prevent unfair labor practices. *See* 29 U.S.C. § 160.

13.     Defendant Jennifer A. Abruzzo is General Counsel of the NLRB. She is sued in her official capacity.

14.     Defendant Lauren M. McFerran is Chairman of the NLRB. She is sued in her official capacity.

15.     Defendant Marvin E. Kaplan is a Member of the NLRB. He is sued in his official capacity.

16.     Defendant Gwynne A. Wilcox is a Member of the NLRB. She is sued in her official capacity.

17.     Defendant David M. Prouty is a Member of the NLRB. He is sued in his official capacity.

18.     Defendant Arthur Amchan is an Administrative Law Judge of the NLRB assigned to preside over the NLRB proceedings against YAPP. He is sued in his official capacity.

## FACTS

19.     Jesse Dowling worked as an Advanced Maintenance Technician at the Romulus plant.

20.     On May 5th, 2023, following a company investigation into several allegations of workplace violence and harassment against Mr. Dowling, YAPP terminated Mr. Dowling for violation of the Company's workplace violence policy.

21.    On June 22, 2023, Local 174, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") (collectively, "Charging Party") filed an unfair labor practice charge (Case 07-CA-320369) with the NLRB regarding Mr. Dowling's termination. The NLRB sought YAPP's evidence and position in response to the above-referenced charge, to which YAPP timely submitted its evidence and position statement in response.

22.    On July 31, 2023, Local 174, UAW, AFL-CIO filed a Certification of Representative Petition for a Unit at YAPP's Romulus, MI plant consisting of all full-time and regular part-time production and maintenance employees.

23.    In September 2023, an election was held and on September 25, 2023, Elizabeth Kerwin, Regional Director for Region 7, issued a Certification of Results of Election, which stated that "The Tally of Ballots shows that a collective-bargaining representative **has not** been selected. No timely objections have been filed. As authorized by the National Labor Relations Board, "It is certified that a majority of the valid ballots **has not** been cast for any labor organization and that no labor organization is the exclusive representative of the employees in the bargaining unit described below." (emphasis in original).

24.    On September 29, 2023, Charging Party filed an amended unfair labor practice charge regarding the termination of Mr. Dowling, as well as with respect

to terms and conditions of employment for YAPP employees, including Mr. Dowling, but not with respect to the election. Once again, the NLRB sought YAPP's evidence and position in response to the above-referenced charge, to which YAPP timely submitted its evidence and position statement in response.

25.     On February 1, 2024, UAW filed another unfair labor practice charge (Case 07-CA-336485) with the NLRB regarding the election and other claims. The NLRB sought YAPP's evidence and position in response to the above-referenced charge, to which YAPP timely submitted its evidence and position statement in response.

26.     On April 9, 2024, the Regional Director for Region 7 issued a complaint in response to the charge, in NLRB case number 07-CA-320369, and noticed that an administrative hearing would occur before an ALJ on July 16, 2024.

27.     On April 22, 2024, YAPP answered the complaint denying all allegations.

28.     On July 25, 2024, YAPP filed an amended answer to the complaint, continuing to deny all allegations.

29.     By agreement of the parties, the July 16, 2024 hearing date was continued to September 10, 2024.

30.     On August 6, 2024, the Acting Regional Director for Region 7 issued

an order consolidating Case 07-CA-320369 with Case 07-CA-336485, issued a consolidated amended complaint, and noticed that an administrative hearing would occur before an ALJ on the September 10, 2024 date for which Case 07-CA-320369 had already been set.

31.    The consolidated complaint sought—in relevant part—the following remedies: "Make whole Jesse Dowling . . . by payment of backpay, including "reasonable search-for-work and interim employment expense" as well as any adverse tax consequences; "[M]ake whole those employees who suffered financial loss including direct or foreseeable pecuniary harms suffered, plus interest computed in accordance with Board policy due to the discipline imposed related to the rules."[1]

32.    On August 12, 2024, YAPP filed a motion to postpone the hearing due to numerous new allegations alleged in the consolidated complaint, which are more extensive and will involve significantly more witnesses. YAPP asked for a two-month extension—a reasonable amount of time, particularly given the increased number of allegations in the consolidated complaint. All other parties – the General Counsel and the Union – objected to the motion. By Order entered on August 13, 2024, Deputy Chief Administrative Law Judge Arthur Amchan denied YAPP's motion to postpone the hearing.

---

[1] Notably, in its original complaint, the General Counsel explicitly listed and sought "consequential damages suffered, including direct and foreseeable pecuniary harm suffered . . . ."

33.     YAPP's answer to the amended complaint is not due to be filed until August 20, 2024.

34.     The hearing is currently set to take place on September 10, 2024.

## COUNT I – BOARD MEMBERS ARE INSULATED FROM REMOVAL IN VIOLATION OF ARTICLE II OF THE CONSTITUTION

35.     YAPP incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

36.     Article II of the Constitution states that the President must "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3; *see Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020).

37.     To discharge that responsibility, the President must have adequate power over officers' appointment and removal, including that the President must have the power to remove subordinate officers who assist in carrying out the President's duties. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010); *see Myers v. United States*, 272 U.S. 52, 117 (1926).

38.     Article II requires that the President "have sufficient control over the performance of [executive officers'] functions, and, by implication, ". . . be able to choose who holds the positions." *Jarkesy v. Sec. & Exch. Comm'n,* 34 F.4th 446, 464 (5th Cir. 2022), cert. granted, 143 S. Ct. 2688 (2023), and cert. denied, 143 S. Ct. 2690 (2023), and aff'd and remanded, 144 S. Ct. 2117 (2024); *see also id*.

39.     Article II's Appointments Clause provides the President authority to appoint officers and inferior officers of the United States. *See* U.S. Const. art. II, § 2. The President has the power to appoint Board Members. The NLRB consists of five Board Members.[2] With the advice and consent of the Senate, the President appoints these Board Members to staggered, five-year terms. The President designates one Board member to serve as the Chairman. *See* 29 U.S.C. § 153(a).

40.     However, the NLRA limits the President's executive authority to remove Board Members. The President may only remove Board Members "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." *Id.*

41.     The removal protections for Board Members are unusually strict. In contrast to more common provisions that permit removal "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Executor v. United States*, 295 U.S. 602, 620 (1935) (quoting 15 U.S.C. § 41), the NLRA permits removal only "for neglect of duty or malfeasance in office," and explicitly prohibits removal for any other cause, like inefficiency, 29 U.S.C. § 153(a).

42.     As such, the President does not have the power to remove Board Members for other causes such as inefficiency—an unconstitutional limit on the President's power.

---

[2] Currently, the Board only has four sitting Members.

43.     The existence of unconstitutional removal protections inflicts twofold harm. It limits the President's constitutional authority. It also produces an administrative bureaucracy that operates on regulated parties without the constitutionally required "degree of electoral accountability." *Collins v. Yellen*, 594 U.S. 220, 251-52 (2021).

44.     Because such removal protections affect not just the President, but also ordinary Americans who must interact with the administrative state, it makes no legal difference whether the President objects to a given statutory limit on his removal powers: "the separation of powers does not depend on the views of individual Presidents, nor on whether 'the encroached-upon branch approves the encroachment.'" *Free Enter. Fund*, 561 U.S. at 497 (citations omitted).

45.     Moreover, unlike other federal agencies, the NLRB has a distinctive structure that divides agency authority between its Members and its General Counsel, who is a politically accountable official responsible for deciding which cases to bring before the NLRB Members. *See* 29 U.S.C. § 153(d); *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 441 (5th Cir. 2022); *NLRB v. United Food & Com. Workers Union, Loc. 23*, 484 U.S. 112, 128–29 (1987).

46.     Two permissible exceptions to the President's removal power exist: "one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or

administrative authority." *Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020); *see also Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935).

47.     These exceptions do not apply here because Board Members "wield substantial executive power," and ALJs possess vast "administrative authority." *Id.*

48.     The Board exerts executive authority in multiple ways. The Board has power to appoint the "executive secretary, and such attorneys, examiners, and regional directors, and other such employees as it may...find necessary for the proper performance of its duties." 29 U.S.C. § 154.

49.     The Board also has the executive power to prevent any person from engaging in an unfair labor practice, decide unfair labor practice charges, issue subpoenas, engage in rulemaking, conduct union representation elections, determine appropriate units for the purpose of collective bargaining, adjudicate representation election disputes, and exercise prosecutorial power in federal district courts. *See* 29 U.S.C. §§ 156, 159, 160.

50.     By way of further example, Section 10(j) of the NLRA, 29 U.S.C. § 160(j), gives the Board authority to exercise quintessentially prosecutorial power in federal district courts: "The Board shall have the power, upon issuance of [an administrative] complaint as provided in [29 U.S.C. § 160(b)] charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in

question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j); *see, e.g.*, *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010) ("Petition power under § 10(j) is prosecutorial in nature[.]").

51.     In these and other ways, the NLRB wields substantial prosecutorial, rulemaking, policymaking, and adjudicative authority.

52.     The Supreme Court has made clear that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of—indeed, under our constitutional structure they must be exercises of—the "executive Power.'" *Seila Law LLC*, 591 U.S. at 197, n. 2.

53.     But for these unlawful removal restrictions, Board Members would be subject to removal by the President. As a result of these unconstitutional removal restrictions, any proceeding before the Board Members is unlawful and illegitimate.

54.     Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023); *Cochran v. SEC*, 20 F.4th 194, 210 n.16, 212–13 (5th Cir. 2021) (en banc), *aff'd and remanded sub nom. Axon Enter.*, 143 S. Ct. 890.

55.     Said a different way, being subject to unconstitutional agency

authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury" under well-settled precedent. *Axon Enter.*, 143 S. Ct. at 903 (citation omitted); *see also, e.g.*, *Cochran*, 20 F.4th at 210 n.16, 212–13

56.    YAPP is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [YAPP is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

57.    Without interim injunctive relief, YAPP will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

58.    YAPP bears a strong likelihood of success on the merits for the reasons articulated above.

59.    If the NLRB is not enjoined from proceeding against YAPP in the pending unfair labor practice hearing, YAPP will be irreparably harmed because it will have endured a proceeding led by Board Members who are unconstitutionally insulated from removal by the President.

60.    The balance of equities tip in YAPP's favor because should the NLRB proceeding go forward, YAPP will lose its right not to undergo a constitutional proceeding, an "injury...impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to

be meaningful." *Axon Enter.*, 598 U.S. at 175.

61.    Further, if the NLRB Members issue an order against YAPP after the administrative proceeding, either upon the ALJ's findings and conclusions taking effect or after consideration of any timely filed exceptions, the harm will likely be irremediable because of the difficulty of obtaining retrospective redress for an unconstitutional proceeding by improperly insulated administrative agency officials. *See Collins*, 594 U.S. at 257-260.

62.    The harm to YAPP, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted.

63.    It is in the public interest to remedy the unconstitutional removal procedures here in order to protect Americans' constitutional rights.

### COUNT II – ADMINISTRATIVE LAW JUDGES ARE INSULATED FROM REMOVAL IN VIOLATION OF ARTICLE II OF THE CONSTITUTION

64.    YAPP incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

65.    ALJs are "Officers of the United States" under the Constitution's Appointments Clause—not mere employees—because among other things, they hold continuing offices through which they preside over adversarial hearings, receive testimony, shape the administrative record, and prepare findings and

opinions, resulting in them functioning as inferior officers of an executive agency. *See* U.S. Const. art. II, § 2; *see also Lucia v. SEC*, 585 U.S. 237, 248-49 (2018); *see also Westrock Servs., Inc.*, 366 NLRB No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]").

66.     Inferior officers "are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy v. Sec. & Exch. Comm'n,* 34 F.4th 446, 464 (5th Cir. 2022), cert. granted, 143 S. Ct. 2688 (2023), and cert. denied, 143 S. Ct. 2690 (2023), and aff'd and remanded, 144 S. Ct. 2117 (2024).

67.     The NLRB appoints ALJs, but ALJs may only be removed "for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the [Merit Systems Protection] Board." 5 U.S.C. § 7521(a).

68.     Members of the Merit Systems Protection Board are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

69.     "If principal officers cannot intervene in their inferior officers' actions except in rare cases, the President lacks the control necessary to ensure that the laws are faithfully executed." *Jarkesy,* 34 F.4th at 464.

70.     Because ALJs can only be removed "for good cause...after opportunity for hearing," and the Merit Systems Protections Board Members who

may remove ALJs are themselves removable by the President only for "inefficiency, neglect of duty, or malfeasance in office," ALJs are insulated from removal by the President by at least two layers of for-cause removal protections. *See* 5 U.S.C. § 7521(a) and 5 U.S.C. § 1202(d).

71.     As the Supreme Court has held, "the added layer of tenure protection makes a difference...[a] second level of tenure protection changes the nature of the President's review...[t]hat arrangement is contrary to Article II's vesting of the executive power in the President." *Free Enter. Fund*, 561 U.S. at 495-96.

72.     But for these unlawful removal restrictions, ALJs would be subject to removal by the President, resulting in either the ALJ assigned to YAPP's administrative case, or the NLRB Members bearing responsibility to supervise and exercise control over the ALJ facing the prospect of removal by the President based on their conduct during the proceedings.

73.     The statutes' provision of at least two layers of for-cause removal protections prevents the President from exercising Presidential authority under Article II of the Constitution and thus violates Article II of the Constitution. *See Free Enter. Fund*, 561 U.S. at 492–508; *Jarkesy*, 34 F.4th at 463–65.

74.     The existence of unconstitutional removal protections inflicts twofold harm. It limits the President's constitutional authority. It also produces an administrative bureaucracy that operates on regulated parties without the

constitutionally required "degree of electoral accountability." *Collins*, 594 U.S at 251-52.

75.     Because such removal protections affect not just the President, but also ordinary Americans who must interact with the administrative state, it makes no legal difference whether the President objects to a given statutory limit on his removal powers: "the separation of powers does not depend on the views of individual Presidents, nor on whether 'the encroached-upon branch approves the encroachment.'" *Free Enter. Fund*, 561 U.S. at 497 (citations omitted).

76.     Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191.

77.     Said differently, being subject to unconstitutional agency authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury" under well-settled precedent. *Axon Enter.*, 143 S. Ct. at 903 (citation omitted); *see also, e.g.*, *Cochran*, 20 F.4th at 210 n.16, 212–13.

78.     YAPP is entitled to declaratory relief sufficient to ensure that the administrative standards to which YAPP is subject will be enforced only by a constitutional agency accountable to the Executive.

79.     Without interim injunctive relief, YAPP will be required to undergo

an unconstitutional proceeding before an illegitimate decisionmaker.

80.    YAPP bears a strong likelihood of success on the merits for the reasons articulated above.

81.    If the NLRB is not enjoined from proceeding against YAPP in the related unfair labor practice hearing, YAPP will be irreparably harmed because it will have endured a proceeding led by officers who are unconstitutionally insulated from removal by the President.

82.    The balance of equities tip in YAPP's favor because should the NLRB proceeding go forward, YAPP will lose its right not to undergo a constitutional proceeding, an "injury...impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enterp.*, 598 U.S. at 191.

83.    Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against YAPP, the constitutional injury will likely be irremediable. The Supreme Court has stated that those subject to an unconstitutional proceeding by improperly insulated administrative agency officials often have no retrospective redress after the fact. *See Collins*, 594 U.S. at 257-260.

84.    The harm to YAPP, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such

relief is granted.

85.     It is in the public interest to remedy the unconstitutional removal procedures here in order to protect Americans' constitutional rights.

**COUNT III – ADMINISTRATIVE LAW JUDGES
ADJUDICATE PRIVATE RIGHTS WITHOUT A JURY TRIAL
IN VIOLATION OF THE SEVENTH AMENDMENT TO THE
CONSTITUTION**

86.     YAPP incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

87.     The Seventh Amendment protects the right to trial by jury. It provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII.

88.     The Supreme Court interprets "'Suits at common law' to include all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption." *Jarkesy*, 34 F.4th at 452 (citing *Tull v. United States*, 481 U.S. 412, 417 (1987)).

89.     The Seventh Amendment "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Sec. & Exch. Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024) (quoting *Parsons v. Bedford*, 3 Pet. 433, 447 (1830)).

90. "The term can include suits brought under a statute as long as the suit seeks common-law-like legal remedies." *Jarkesy*, 34 F.4th at 452 (citing *Tull v. United States*, 481 U.S. 412, 417 (1987)).

91. In other words, YAPP is entitled to a jury trial if its adversary seeks *legal* relief against it. As the United States Supreme Court held in *SEC v. Jarkesy,* "it is well established that common law claims must be heard by a jury." *Sec. & Exch. Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2127 (2024). Moreover, "[o]nce such a suit 'is brought within the bounds of federal jurisdiction,' an Article III court must decide it with a jury if the Seventh Amendment applies." *Id*. at 2131 (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)).

92. "Compensatory damages" or "monetary relief for all losses...sustained as a result of the alleged breach of...duties" are "the classic form of legal relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (emphasis omitted).

93. The NLRA authorized the Board to remedy unfair labor practices through an "order requiring [the] person to cease and desist from such unfair labor practice, and to take...affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c).

94. The statute authorizes *equitable* relief. The statute does not authorize *legal* relief— such as compensatory damages.

95. Despite this clear language, the Board has authorized its Regions to

seek consequential or "compensatory" damages. *See Thryv, Inc.*, 372 NLRB No. 22 (Dec. 13, 2022) (enf. denied in part and vacated in part, *Thryv Inc., v. NLRB*, 102 F.4th 727 (5th Cir. 2024)).

96.     According to the Board, these damages may include "interest and late fees on credit cards;" "credit card debt;" "early withdrawals from [a] retirement account;" compensation for the loss of a "car or [] home," if the discriminatee is unable to make loan or mortgage payments; "increased transportation or childcare costs;" or "out-of-pocket medical expenses." *Id.* at 15.

97.     In an attempt to distance itself from the word "consequential" and avoid finding itself in violation of the Seventh Amendment, the Board explained:

> [W]e stress today that the Board is not instituting a policy or practice of awarding consequential damages, a legal term of art more suited for the common law of torts and contracts. Instead, we ground our decision in the make-whole principles of Section 10(c) of the Act...and our affirmative duty to rectify the harms caused by a respondent's unfair labor practice by attempting to restore the employee to the situation they would have been in but for that unlawful conduct.

*Id.* at 14.

98.     Read differently, the Board authorized legal relief by calling it equitable relief so as to manipulate its authority.

99.     The Fifth Circuit saw through the veil, referring to remedies requiring "losses incurred as a direct or foreseeable result of" the alleged unlawful action as "novel, *consequential*-damages-like labor law remed[ies]." *Thryv Inc., v. NLRB*, 102 F.4th 727, 7376 (5th Cir. 2024) (emphasis added).

100.    In its consolidated complaint in the underlying administrative matter, the Region is seeking consequential damages of an unspecified amount against YAPP, through "reasonable search-for-work and interim employment expense" as well as any adverse tax consequences with respect to Mr. Dowling, and direct or foreseeable pecuniary harms suffered, plus interest computed in accordance with Board policy due to the discipline imposed related to the rules, with respect to all employees.

101.    In its original complaint, the NLRB Region made a direct reference to seeking consequential damages, and in the amended complaint, although the Region removed the direct reference to the term "consequential damages," the amended language has not changed the underlying damages that the Region is seeking in the underlying unfair labor practice action.

102.    The Region continues to pursue consequential damages against employers, including YAPP.

103.    The fact that the underlying administrative complaint also seeks equitable relief does not strip YAPP of its jury-trial right. *See Jarkesy*, 34 F.4th at 454 ("The Seventh Amendment applies to proceedings that involve a mix of legal and equitable claims.").

104.    Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon*

*Enter., Inc.*, 598 U.S. at 191.

105.   YAPP is entitled to declaratory relief to ensure that it may have the opportunity to present its case against consequential damages to a jury of its peers.

106.   Without interim injunctive relief, YAPP may be ordered to pay damages to Charging Party without the appropriate safe guards a jury provides.

107.   YAPP bears a strong likelihood of success on the merits for the reasons articulated above.

108.   If the NLRB is not enjoined from proceeding against YAPP in the related unfair labor practice hearing, YAPP will be irreparably harmed because it may be forced to pay damages that are not permitted to be determined in a non-Article III court setting.

109.   The balance of equities tips in YAPP's favor because it stands to suffer both economic and constitutional harms while Defendants stand to lose nothing.

110.   It is in the public interest to remedy the Board's unconstitutional method of recovering damages from employers.

### COUNT IV – THE BOARD'S WIELDING OF EXECUTIVE, LEGISLATIVE, AND JUDICIAL AUTHORITY AND POWER VIOLATES THE FIFTH AMENDMENT TO THE CONSTITUTION

111.   YAPP incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

112. The NLRB is an executive agency. 29 U.S.C § 153(a). It is not a part of the judiciary or legislature.

113. Under the Constitution, the judicial power belongs to Article III courts and cannot be shared with legislature or executive. *See Stern v. Marshall*, 564 U.S. 462, 482 (2011).

114. Under "the basic concept of the separation of powers...that flows from the scheme of a tripartite government adopted in the Constitution, the judicial Power of the United States...can no more be shared with another branch than the Chief Executive...can share with the Judiciary the veto power." *Id.* at 483 (citing *United States v. Nixon*, 418 U.S. 683, 704 (1974)) (internal citations omitted).

115. However, as explained in Count III, *infra*, the Board recently took an adjudicatory role when it expanded its authority to award damages under the NLRA and made itself the body determining the amount of that award. *See Thryv, Inc.*, 372 NLRB No. 22 at 9.

116. The ability to determine the appropriate amount of legal relief belongs to a jury, the function of the judiciary, not the executive.

117. By determining the amount of direct and foreseeable pecuniary and consequential damages in YAPP's administrative proceeding, Defendants, as executives, act as the judiciary.

118. In the same vein, it acted in a quasi-legislative role when it articulated

24

a new interpretation of Section 10(c) of the Act which expressly authorizes the Board to issue an "order requiring [the] person to cease and desist from such unfair labor practice, and to take...affirmative action including reinstatement of employees with or without back pay," and no other remedies. 29 U.S.C. § 160(c).

119.   By promulgating this new remedy, the Board essentially created its own rule regarding remedies that may be awarded (thereby acting in the legislative capacity) and then promulgated the method of determining that remedy (thereby enforcing this method through its executive capacity, while determining the amount of the relief in a judicial capacity), thus exercising all three powers at once.

120.   "An unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).

121.   Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191.

122.   YAPP is entitled to declaratory relief to ensure that its due process rights are not violated.

123.   Without interim injunctive relief, YAPP will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

124.   YAPP bears a strong likelihood of success on the merits for the

reasons articulated above.

125.    If the NLRB is not enjoined from proceeding against YAPP in the related unfair labor practice hearing, YAPP will be irreparably harmed because it will have endured a proceeding led by individuals who serve as executives, legislators, and judges in violation of the separation of powers.

126.    The balance of equities tips in YAPP's favor because, should the NLRB proceeding go forward, YAPP will lose its right to undergo a constitutional proceeding, an injury "impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enter., Inc.*, 598 U.S. at 179, 192.

127.    It is in the public interest to remedy the unconstitutional procedures here in order to protect Americans' constitutional rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, YAPP respectfully requests that the Court order the following relief and enter judgment:

1. Declaring that:

    a. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 U.S.C. § 7521(a) are unconstitutional;

    b. The statutes, regulatory provisions, guidance, and/or policies

restricting the removal of NLRB Members, including 29 U.S.C. § 153(a), are unconstitutional; and

c.  The NLRB proceedings against YAPP deprive it of its constitutional right to a trial by jury.

2.  Preliminarily enjoining Defendants from subjecting YAPP to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3.  Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above;

4.  Awarding YAPP its costs and expenses incurred in bringing this action, including but not limited to, reasonable attorney's fees; and

5.  Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Dated: August 19, 2024.

Respectfully submitted,

By: *s/ R. Michael Azzi*
R. Michael Azzi
Amanda Fielder
**WARNER NORCROSS + JUDD**
150 Ottawa Avenue NW
Grand Rapids, MI 49503
Tel: (616) 752-2000
Fax: (616) 752-2500
mazzi@wnj.com
afielder@wnj.com

Tim K. Garrett
Robert W. Horton*
Hunter K. Yoches*
(*applications for admission* forthcoming)
**BASS, BERRY & SIMS PLC**
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: (615) 742-6200
Fax: (615) 742-6293
tgarrett@bassberry.com
bhorton@bassberry.com
hunter.yoches@bassberry.com

*Counsel for YAPP USA Automotive Systems, Inc.*

45318779.7