UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YAPP USA AUTOMOTIVE SYSTEMS,
INC.,

      Plaintiff,

v.

NATIONAL LABOR RELATIONS
BOARD, JENNIFER ABRUZZO,
LAUREN M. McFERRAN, MARVIN E.
KAPLAN, GWYNNE A. WILCOX,
DAVID M. PROUTY, and ARTHER
AMCHAN,

      Defendants.

Case No. 24-12173
Honorable Laurie J. Michelson

---

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [4]

Congress passed the National Labor Relations Act as part of a series of New Deal–era legislation in 1935. *See* 29 U.S.C. §§ 151–169. The Act established the "policy of the United States" as "encouraging the practice and procedure of collective bargaining" and "protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing." *Id.* § 151. To administer this policy, Congress created an independent expert agency headed by a multi-member board—the National Labor Relations Board. *Id.* § 153(a). Under the Act, Board members are appointed to five-year terms by the President and confirmed by the Senate—and as an added measure of insulation from political volatility,

Congress provided that Board members are only removable by the President "for neglect of duty or malfeasance in office." *Id.*

The NLRB faced opposition and constitutional challenges early on in its history. But in 1935, the Supreme Court upheld the constitutionality of for-cause removal restrictions for Commissioners of the Federal Trade Commission—a similarly structured, independent, multi-member executive agency. *Humphrey's Ex'r v. United States*, 295 U.S. 602, 620 (1935). And two years later, in 1937, the Court upheld the constitutionality of the NLRA. *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33 (1937). In the 87 years since, the NLRB has administered the NLRA's system of federal labor law without like constitutional challenges.

Until now. A few years ago, the Supreme Court ruled in *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 218 (2020), that the single-director structure of the CFPB was unconstitutional when the single director could only be removed for cause. Like the CFPB director, the NLRB Board members can also only be removed for cause. So recently, several cases have been filed across the country seeking to enjoin NLRB proceedings as unconstitutional.[1]

---

[1] These cases raise a combination of claims challenging the NLRB's structure as unconstitutional as well as claims under the Seventh Amendment. *See, e.g.*, *Space Expl. Technolo-Gies Corp. v. NLRB*, No. 24-00203, 2024 WL 3512082, at *1 (W.D. Tex. July 23, 2024); *Energy Transfer, LP v. NLRB*, No. 24-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024); Dismissal Order at 6–10, *Nexstar Media, Inc., Grp., v. NLRB*, No. 24-01415 (N.D. Ohio Aug. 26, 2024), ECF No. 17; Resp't's Mot. for J. Pleadings, *NLRB v. Trinity Health Grand Haven Hosp.*, No. 24-00445 (W.D. Mich. July 1, 2024), ECF No. 35; Complaint at 2–4, *Alivio Med. Ctr. v. NLRB*, No. 24-07217 (N.D. Ill. Aug. 14, 2024), ECF No. 1. And several litigants have raised similar claims directly with the NLRB as part of their administrative proceedings or on appeal to the Courts of

This is one such case. Plaintiff YAPP USA Automotive Systems, Inc., was charged in two NLRB cases with committing alleged unfair labor practices in violation of Section 8 of the NLRA. On August 6, 2024, the NLRB Regional Director for Region 7 combined the cases, issued a consolidated amended complaint, and noticed an administrative hearing before an NLRB Administrative Law Judge on September 10, 2024.

Two weeks later, on August 19, 2024, YAPP filed the present action, seeking a permanent injunction to stop the administrative proceedings on the grounds that the NLRB's structure, and thus its administrative proceedings, are unconstitutional. (ECF No. 1.) That same day, YAPP filed a motion for a temporary restraining order and expedited preliminary injunction, seeking to stay the September 10, 2024, hearing until final resolution of this case. (ECF No. 4.) Given the time constraints and substantial briefing (*see* ECF Nos. 4, 24, 27)[2] the Court considers the motion without further argument, *see* E.D. Mich. LR 7.1(f).

---

Appeals from a final NLRB order. *See* Trader Joe's United Closing Brief at 7, *Trader Joe's E.*, No. 01-CA-296847 (N.L.R.B. June 28, 2024*)*; Amazon's Answer to Second Amended Consolidated Complaint at 14–16*, Amazon.com Serv., LLC*, No. 29-CA-296817 (N.L.R.B. Feb. 15, 2024); ALJ Decision at 2, *Starbucks Corp. & Workers United*, No. 15–CA–296254 (N.L.R.B. May 10, 2024); Pet. for Review, *Macy's Inc., v. NLRB*, No. 23-150 (9th Cir. Feb. 2, 2023), ECF No. 1.

[2] The Court previously granted the motion of the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") to file an amicus brief. (ECF No. 28.) YAPP's reply to the NLRB's response raised counter arguments to those contained in the amicus brief. (*See* ECF No. 27, PageID.260 (responding to amicus laches argument).) Accordingly, YAPP has had an adequate opportunity to respond to the amicus brief.

For the reasons that follow, the Court will DENY YAPP's motion for a preliminary injunction.

## I. Background

### A.

To begin, an overview of the NLRB's authority, structure, and administrative process is helpful.

In 1935, Congress created the NLRB to pursue its policy of "encouraging the practice and procedure of collective bargaining" to more effectively resolve "industrial disputes arising out of differences as to wages, hours, or other working conditions." 29 U.S.C. § 151.

The Board is made up of five members who serve staggered terms that can last up to five years. *Id.* § 153(a). All are "appointed by the President by and with the advice and consent of the Senate," and the President designates which of the five is to serve as Chairman. *Id.* Although political balancing of the Board members is not mandated by the NLRA, "there has been a 'tradition' since the Eisenhower years that Presidents have filled no more than three of the NLRB's five seats with members of their own party." Brian D. Feinstein & Daniel J. Hemel, *Partisan Balance with Bite*, 118 Colum. L. Rev. 9, 54 (2018). Importantly, the President may remove a Board member only "for neglect of duty or malfeasance in office." 29 U.S.C. § 153(a).

The NLRA divides responsibility over administration of private-sector federal labor law between the Board and the General Counsel of the Board. *See id.* § 153(d). The General Counsel has "final authority, on behalf of the Board, in respect of the [investigation and prosecution of unfair labor practice complaints]," and the Board

adjudicates those complaints. *Id.* "This bifurcated structure reflects the intent of the Congress 'to differentiate between the General Counsel's and the Board's "final authority" along a prosecutorial versus adjudicative line.'" *NLRB v. Fed. Lab. Rels. Auth.*, 613 F.3d 275, 278 (D.C. Cir. 2010) (quoting *NLRB v. United Food & Com. Workers Union, Loc. 23*, 484 U.S. 112, 124 (1987)). Regional Directors act under the purview of the General Counsel. 29 U.S.C. § 153(d) (noting that the General Counsel "shall exercise general supervision over . . . the officers and employees in the regional offices").

The NLRB reviews and adjudicates objections to conduct during a union election process. *See* 29 C.F.R. § 102.69(c). Similarly, any aggrieved party may file a charge with the NLRB alleging any of the unfair labor practices outlined in Section 8 of the Act. *See id.* §§ 101.2, 102.9. Charges are filed with the NLRB Regional Director for the region in which the alleged violation occurred, *see id.* § 101.2, and that official is responsible for determining if there is sufficient evidence to substantiate a charge, *see id.* § 101.4. If the Regional Director finds that a charge has merit, he or she initiates formal action by issuing a complaint. *See id.* § 101.8. Complaints are adjudicated in a hearing before an ALJ, *see id.* § 101.10(a), whose decision may be appealed to the Board, *see id.* § 101.12(a); *see also NLRB v. Ampersand Publ'g, LLC*, 43 F.4th 1233, 1235 (9th Cir. 2022).

If the NLRB determines that an employer has engaged in conduct prohibited by the NLRA, the Board may "seek enforcement of its order[s] in a federal court of appeals." *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S.

771, 776 (2023) (citing 29 U.S.C. § 160(e)). Similarly, any party "aggrieved by a final order of the Board" may petition for review of the Board's action in their regional court of appeals or in the D.C. Circuit. *See* 29 U.S.C. § 160(f).

## B.

With that background, the Court will turn to the facts of this case.

YAPP USA Automotive Systems, Inc., is a Tennessee corporation that designs, manufactures, and supplies automotive fuel systems. (ECF No. 1, PageID.3.) In 2023, employees at YAPP's facility in Romulus, Michigan, began a union organizing campaign to elect UAW Local 174 as their representative. (*Id.* at PageID.4–5.) During this campaign, YAPP terminated employee Jesse Dowling allegedly due to workplace violence and harassment complaints lodged against him. (*Id.*) Believing Dowling was terminated for his union organizing activities, Local 174 filed an unfair labor charge with Region 7 of the NLRB on June 22, 2023. (*Id.* at PageID.5.)

A short time later, on July 31, 2023, the Local 174 filed a Certification of Representative Petition, seeking an election for a bargaining unit consisting of all full-time and part-time production and maintenance employees at the YAPP Romulus facility. (*Id.*) The election was held in September 2023, with the majority voting against electing the Local 174 as their exclusive representative. (*Id.*; *see* ECF No. 4-2, PageID.89.) In February 2024, Local 174 filed another charge with the NLRB alleging that YAPP committed various unfair labor practices related to the election. (ECF No. 1, PageID.6.)

The Regional Director investigated the initial charge and on April 9, 2024, issued a complaint against YAPP alleging that Dowling's termination, among other

things, violated Section 8(a)(1) of the Act. (*Id.*; *see* ECF No. 4-2, PageID.91–97.) A hearing before an NLRB ALJ was initially set for July 16, 2024, and adjourned by agreement of the parties to September 10, 2024, while they worked to try to resolve the matter. (ECF No. 1, PageID.6; ECF No. 4-2, PageID.96; ECF No. 27, PageID.260.) On August 6, 2024, the Regional Director merged the two cases against YAPP, issued a consolidated amended complaint, and kept the September 10, 2024, hearing date. (ECF No. 1, PageID.6–7; ECF No. 4-2, PageID.101–110.) The amended complaint alleges that YAPP violated the NLRA by discharging an employee for engaging in NLRA-protected activities, interfering with employees' NLRA rights through threats and other coercive conduct, and refusing to recognize and bargain with the union. (*See* ECF No. 4-2, PageID.101–110.) Of relevance, the Regional Director included in the complaint a request to "make whole" employees who suffered "direct or foreseeable pecuniary harms" as a result of YAPP's alleged unlawful conduct. (*Id.* at PageID.108.)

YAPP does not believe it should be subject to this administrative proceeding. In short, YAPP claims that the NLRB's Board members and its ALJs are unconstitutionally shielded from Presidential removal such that this Court should invalidate that proceeding. YAPP also contends that the damages being sought in the administrative proceeding violate its Seventh Amendment right to a jury trial. So YAPP seeks a preliminary injunction staying the September 10, 2024, hearing pending final resolution of this case. (ECF No. 4.)

7

## II.

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020) (citation omitted); *see also Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 404 (6th Cir. 2024) ("The issuance of a preliminary injunction is the exception, rather than the rule.").

In evaluating whether to grant YAPP preliminary injunctive relief, the Court must consider and balance four factors: (1) YAPP's likelihood of success on the merits, (2) whether YAPP will suffer irreparable injury without an injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) whether the public interest would be served by the injunction. *See S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017). The Sixth Circuit has "cautioned that these are factors to be balanced, not prerequisites to be met. At the same time, however, [it has] also held that '[a] preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.'" *Id.* (second alteration in original) (citation omitted).

### III. Likelihood of Success

Start with likelihood of success on the merits. YAPP raises the following constitutional claims: (1) that the NLRB's Board Members and ALJs are unconstitutionally insulated from removal by the President, (2) that YAPP is being deprived of its right to a jury trial for the allegedly legal remedies being sought by the NLRB, and (3) that the structure of the NLRB violates the separation of powers

8

and YAPP's due process rights. (ECF No. 4, PageID.38.) The Court will address each in turn.

## A. Removal Protections

YAPP maintains that two features of the structure of the NLRB violate Article II of the Constitution and the separation of powers and thus compel invalidation of the agency's proceedings against it. First, relying on *Seila Law*, 591 U.S. at 218, YAPP argues that the members of the NLRB are unconstitutionally insulated from removal by the President because they can only be removed "for neglect of duty or malfeasance in office." Second, YAPP says that the NLRB's ALJs are likewise insulated by multiple levels of for-cause protection in contravention of the Supreme Court's holding in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010).

Neither of these arguments, however, are likely to succeed in invalidating the NLRB proceedings.

### 1.

Article II of the United States Constitution vests in the President the sole power and responsibility to "take Care that the Laws be faithfully executed." U.S. Const., art. II, §§ 1, 3. "This language establishes a core principle of constitutional separation of powers: '[T]he President's removal power is the rule, not the exception.'" *Calcutt v. FDIC*, 37 F.4th 293, 313 (6th Cir. 2022) (alteration in original) (quoting *Seila Law*, 591 U.S. at 228), *rev'd on other grounds*, 598 U.S. 623 (2023). In analyzing the constitutionality of a restriction on the President's removal authority, *Seila Law* indicated that the first step is to determine whether an officer's tenure protection

falls within an established exception to the general removal authority. *Seila Law*, 591 U.S. at 215.

As relevant here, one exception, established in *Humphrey's Executor*, "permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *See id.* at 218 (citing *Humphrey's Ex'r*, 295 U.S. at 620). And another exception permits for-cause removal protections "for inferior officers with limited duties and no policymaking or administrative authority." *Id.* at 218 ("These two exceptions . . . 'represent what up to now have been the outermost constitutional limits of permissible congressional restrictions on the President's removal power.'" (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 537 F.3d 667, 686 (D.C. Cir. 2008) (Kavanaugh, J., dissenting), *aff'd in part, rev'd in part, and remanded*, 561 U.S. 477 (2010))). Both apply here.

First, the NLRB appears to fall comfortably within the *Humphrey's Executor* exception. As mentioned, in *Humphrey's Executor*, the Supreme Court upheld a statute that protected the Commissioners of the FTC from removal except for "inefficiency, neglect of duty, or malfeasance in office." *Humphrey's Ex'r*, 295 U.S. at 620 (quoting 15 U.S.C. § 41). In reaching that conclusion, the Court viewed the FTC as exercising "no part of the executive power." *Id.* at 628. And "[t]o the extent that [the FTC] exercise[d] any executive *function*, as distinguished from executive *power* in the constitutional sense, it [did] so only in the discharge . . . of its quasi legislative or quasi judicial powers." *Id.*

10

While *Humphrey's Executor* involved the commissioners of the FTC, it sheds helpful light on the analysis of the removal protections of the NLRB members. As the Court explained in *Seila Law*:

> The Court [in *Humphrey's Executor*] identified several organizational features that helped explain its characterization of the FTC as non-executive. Composed of five members—no more than three from the same political party—the Board was designed to be "non-partisan" and to "act with entire impartiality." The FTC's duties were "neither political nor executive," but instead called for "the trained judgment of a body of experts" "informed by experience." And the "Commissioners' staggered, seven-year terms enabled the agency to accumulate technical expertise and avoid a "complete change" in leadership "at any one time."

*See Seila L.*, 591 U.S. at 218 (citing *Humphrey's Ex'r*, 295 U.S. at 619–20, 624) (cleaned up).

Like the FTC, the NLRB is a multi-member independent, expert agency. The Board members, similar to the Commissioners, are balanced along partisan lines, serve staggered multi-year terms, and exercise quasi-legislative and quasi-judicial power. What is more, the NLRB's structure is not novel or new like the agencies at issue in the Supreme Court's recent removal power cases. *See Calcutt*, 37 F.4th at 314 ("In concluding that the CFPB Director was unconstitutionally shielded from removal, the *Seila Law* Court emphasized two key features: the historical novelty of an agency headed by a single director removable only for cause, and the inconsistency of this design with constitutional structure." (citation omitted)). Indeed, the NLRB was itself modeled after the FTC, and the NLRA was modeled after the FTC Act.[3]

---

[3] *See Dish Network Corp. v. NLRB*, 953 F.3d 370, 375 n.2 (5th Cir. 2020) (noting that the NLRB was created based on the Federal Trade Commission's design); J.

The NLRA was signed into law on July 5, 1935, just one month after the Supreme Court decided *Humphrey's Executor*. *See Free Enter. Fund*, 561 U.S. at 547 (Breyer, J., dissenting) ("[O]nly *one month* after *Humphrey's Executor* was decided, Congress returned to its pre-*Myers* practice of including such [for-cause removal] provisions in statutes creating independent commissions. *See . . .* 29 U.S.C. § 153 (establishing the National Labor Relations Board with an explicit removal limitation))."). And legal challenges to the Board's removal protections were not among the early constitutional challenges to the NLRA. For good reason—it was not controverted that the NLRB's removal protections were constitutional under *Humphrey's Executor*. *See generally Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 760 (10th Cir. 2024) ("Since the Supreme Court's decision in *Humphrey's Executor*, the constitutionality of independent [multi-member] agencies, whose officials possess some degree of removal protection that insulates them from unlimited and instantaneous political control, has been uncontroversial."); *Free Enter. Fund,* 537 F.3d at 686 (Kavanaugh, J., dissenting) (distinguishing removal protections for the Public Company Accounting Oversight Board from independent executive agencies "like the FCC, the FTC, and the NLRB" that are "permissible under the Supreme Court's 1935 decision in *Humphrey's Executor*").

---

Warren Madden, *Origin and Early Years of the National Labor Relations Act*, 18 Hastings L.J. 571, 572 (1967) (describing the Wagner Act, which eventually became the NLRA, and noting that "Senator Wagner drafted a statute, modeled after the Federal Trade Commission Act, creating a quasi-judicial tribunal with defined legal authority and power to have its orders enforced by court decree").

YAPP disagrees that *Humphrey's Executor* applies to the NLRB's removal protections. According to YAPP, Board members exercise "significant executive power," and thus, under *Seila Law*, they are not eligible to receive such removal protections.

YAPP interprets *Humphrey's Executor* and *Seila Law* too narrowly. And its interpretation has recently been rejected by the Fifth and Tenth Circuits. *See Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 355–56 (5th Cir. 2024) ("The Supreme Court, while it has limited *Humphrey's*, has not yet overruled it. Nor, of course, can we. . . . As best we can gather, the Supreme Court has not yet limited that decision to the FTC alone. Rather . . . the exception still protects any 'traditional independent agency headed by a multimember board'—and thus still protects the [Consumer Product Safety] Commission."), *petition for cert. filed*, No. 23-1323 (June 18, 2024); *Leachco*, 103 F.4th at 761–63 (concluding that CPSC Commissioners are distinguishable from the CFPB director, whose removal protections were struck down in *Seila Law*, for at least three reasons: "the CPSC's structure is well-grounded in historical precedent—it is structured similarly to many other independent, multimember agencies," "the CPSC is not headed by a single director," and Commissioners' "staggered terms mean that each President has an opportunity to influence the CPSC's leadership, and the President can also influence the CPSC through the budgetary process").[4]

---

[4] YAPP also argues that the grounds for removing NLRB Board members "are even stricter than those that insulated the FTC Commissioners in 1935." (ECF No. 4,

Similarly, in response to YAPP's argument that the NLRB wields substantial executive power, "the Supreme Court's statements in *Morrison* suggest that the exercise of some arguably 'executive' functions does not undermine the constitutionality of tenure protections for officers of an expert, non-partisan agency." *Leachco,* 103 F.4th at 762 (citing *Morrison v. Olson*, 487 U.S. 654 (1988)); *see also Seila L.*, 591 U.S. at 216 ("'To the extent that [the FTC] exercise[d] any executive *function*[,] as distinguished from executive Power in the constitutional sense,' it did so only in the discharge of its 'quasi-legislative or quasi-judicial powers.'" (alterations in original) (quoting *Humphrey's Executor,* 295 U.S. at 628)); *cf. Seila L.*, 591 U.S. at 278 n.7 (Kagan, J., concurring in part and dissenting in part) ("The majority is quite right that today we view *all* the activities of administrative agencies as exercises of 'the "executive Power."' But we well understand, just as the *Humphrey's* Court did, that those activities may 'take "legislative" and "judicial" forms.' The classic examples are agency rulemakings and adjudications, endemic in agencies like the FTC and CFPB." (quoting *City of Arlington v. FCC*, 569 U.S. 290, 305 (2013))).

---

PageID.59 (quoting 29 U.S.C. § 153(a)).) True, FTC Commissioners are removable "for inefficiency, neglect of duty, or malfeasance in office." *Humphrey's Ex'r*, 295 U.S. at 620 (quoting 15 U.S.C. § 41). NLRB Members, by contrast, are removable only "for neglect of duty or malfeasance in office," but not for inefficiency. 29 U.S.C. § 153(a). Nonetheless, several circuits have held that removal protections identical to those applicable to NLRB members still fall within the *Humphrey's Executor* exception. *See Consumers' Rsch.*, 91 F.4th at 355–56; *Leachco*, 103 F.4th at 761–63; *see also* Jane Manners & Lev Menand, *The Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. 1, 8, 69 (2021) (explaining that the absence of "inefficiency" as a ground for removal does not unconstitutionally interfere with the President's authority).

14

In sum, *Humphrey's Executor* remains binding and continues to apply to traditional independent agencies led by a multimember board, including the NLRB. *See United States v. SunSetter Prods. LP*, No. 23-10744, 2024 WL 1116062, at \*4 (D. Mass. Mar. 14, 2024) ("*Humphrey's Executor* remains binding and continues to apply to any traditional independent agency headed by a multimember board, . . . like the CPSC." (internal quotation marks and citations omitted)). Accordingly, YAPP has not demonstrated a likelihood of success on the merits of its claim that the NLRB's for-cause removal protections are unconstitutional.

So too for YAPP's claim about the NLRB's ALJs' removal protections. Generally speaking, it is constitutional for Congress to protect inferior officers with "good cause" removal restrictions. *Morrison*, 487 U.S. at 692–93; *Free Enter. Fund,* 561 U.S. at 495. And ALJs are inferior officers. *Lucia v. SEC*, 585 U.S. 237, 244 n.3 (2018). True, in *Free Enterprise Fund* the Supreme Court concluded that Congress violated Article II when it gave inferior officers who exercised significant regulatory powers two layers of tenure (or removal) protections. *Free Enter. Fund*, 561 U.S. at 498. But the Court explicitly excluded ALJs from its holding, distinguishing similar tenure protections for inferior officers who perform adjudicative rather than regulatory functions. *Id.* at 507 n.10.

Subsequently, several circuits have found that Congress may shield ALJs performing purely adjudicatory functions from at-will removal, even where there are two layers of good-cause protection. *See Leachco*, 103 F.4th at 764 (finding ALJ removal restrictions valid as ALJs performed "a purely adjudicatory function,

15

Congress did not statutorily require that the CPSC use ALJs for administrative adjudications, and the good cause standard in the provision restricting—but not precluding—ALJs' removal is a 'lesser impingement' than the standard at issue in *Free Enterprise Fund*'" (citation omitted)); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1132–36 (9th Cir. 2021) (upholding DOL ALJs' removal restrictions for similar reasons).

In line with these holdings, the Sixth Circuit has expressed serious "doubt[s]" that those subject to agency enforcement proceedings "could establish a constitutional violation from the ALJ removal restrictions" enacted by Congress. *Calcutt,* 37 F.4th at 319 (citation omitted), *rev'd on other grounds*, 598 U.S. 623 (2023). The *Calcutt* Court was specifically addressing removal restrictions for Federal Deposit Insurance Corporation ALJs, but its reasoning is equally applicable here. NLRB ALJs—like FDIC ALJs—enjoy two layers of for-cause removal protections. They can only be removed for good cause, which is itself "established and determined" by the Merit Systems Protection Board after a hearing, and the MSPB members are removable by the President only for "inefficiency, neglect of duty, or malfeasance in office." *See* 5 U.S.C. §§ 7521(a), 1202(d).

YAPP attempts to distinguish this case from *Calcutt* in two ways. Neither persuades.

First, YAPP says "NLRB ALJs have greater decisional authority than FDIC ALJs." (ECF No. 4, PageID.63.) More specifically, says YAPP, NLRB ALJs' final orders "automatically become the decision and order of the Board" when no exceptions

16

are filed. 29 U.S.C. § 160(c); 29 C.F.R. § 102.48(a). By contrast, the FDIC Board's final decision "will be based upon review of the entire record of the proceeding, except that the Board of Directors may limit the issues to be reviewed to those findings and conclusions to which opposing arguments or exceptions have been filed by the parties." 12 C.F.R. § 208.39(c)(1).

These minor differences aside, *Calcutt* makes clear that the permissibility of ALJs' removal protections "centers on their status as adjudicatory officials that issue non-final recommendations to an agency." *Calcutt,* 37 F.4th at 320. NLRB ALJs fit comfortably within that description.

Also, like the FDIC, the NLRB is not required to assign a given case to an ALJ. The NLRB is instead empowered to preside over a hearing itself. *See* 29 U.S.C. § 160(b). If a case is assigned to an ALJ, the Board is statutorily obligated to review the ALJ's decision and recommended order upon the filing of valid exceptions. *Id.* And even if no party has filed a relevant exception, the Board may reverse a finding made by the ALJ. *See, e.g.*, *Hedstrom v. NLRB*, 629 F.2d 305, 315–16 (3d Cir. 1980). The Board's review extends to any rulings made by the ALJ, 29 C.F.R. § 102.46(a), and the Board may withdraw such adjudicative functions from its ALJs or modify its regulations, 29 U.S.C. § 156.

Second, it is true that a split Fifth Circuit panel in *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024), found that the SEC's ALJs' removal protections were unconstitutional. And two Texas district courts bound by that decision recently found the NLRB's ALJs' removal protections were

unconstitutional. *See Energy Transfer*, 2024 WL 3571494, at *3; *Space Expl.,* 2024 WL 3512082, at *6. But this Court is bound by the Sixth Circuit's ruling in *Calcutt*, which it reads as not invalidating ALJ removal protections like those applicable to NLRB ALJs.

In sum, NLRB ALJs perform purely adjudicatory functions, issue non-final recommendations to the NLRB, and enjoy good-cause protections that are a "lesser impingement" than the removal standard at issue in *Free Enterprise Fund*. Additionally, Congress did not mandate that the NLRB use ALJs in its administrative proceedings. So it appears that the two-level removal protections here are valid under existing precedent.

**2.**

At the end of the day, however, the Court does not need to get further bogged down in the constitutionality of the removal protections for NLRB Board members and ALJs. Even if they were deemed unconstitutional, YAPP has failed to show that it suffered the requisite causal harm necessary to bring its removal claims.

In *Collins* v. *Yellen*, 594 U.S. 220 (2021), the Supreme Court refused to void actions taken by the Federal Housing Finance Agency even after finding that the removal protections for the agency's single director were unconstitutional. *Collins*, 594 U.S. at 257–58. The Court's decision "established that succeeding in a constitutional separation of powers challenge to a removal provision does not by itself entitle a party to retrospective relief. Instead, the challenger must establish that the unconstitutional provision actually caused him compensable harm—in other words,

he must demonstrate that the unconstitutional removal provision actually affected the agency's decision or conduct against him." *Leachco*, 103 F.4th at 756 (citing *Collins*, 594 U.S. at 259–60).

Thus, directs the Sixth Circuit, *Collins* "provides a clear instruction: To invalidate an agency action due to a removal violation, that constitutional infirmity must cause harm to the challenging party." *Calcutt*, 37 F.4th at 316 (collecting cases in agreement from other circuits). Importantly, such a showing cannot be satisfied by "vague, generalized allegations," instead, "a more concrete showing [i]s needed." *Id.* at 317.

Once again, YAPP's efforts to distinguish *Calcutt* (and a number of other cases Defendants cite) is unavailing. YAPP says these cases only addressed the plaintiffs' entitlement to retrospective relief, and therefore they are not applicable to YAPP's request for prospective relief. (*See* ECF No. 27, PageID.558.) But this is not a fair reading of those cases. In *Calcutt,* the Sixth Circuit specifically explained:

> That distinction does not matter here. The *Collins* inquiry focuses on whether a "harm" occurred that would create an entitlement to a remedy, rather than the nature of the remedy, and our determination as to whether an unconstitutional removal protection "inflicted harm" remains the same whether the petitioner seeks retrospective or prospective relief (particularly when we review an adjudication that has already ended). In other words, *Collins* instructs that we must ask whether the FDIC Board's for-cause protections "inflicted harm," such as by preventing superior officers from removing Board members when they attempted to do so, or possibly by altering the Board's behavior. The Removal and Prohibition Order's prospective effect does not change a court's ability to conduct that inquiry.

*Calcutt*, 37 F.4th at 316 (citations omitted). Several other circuits agree. *See CFPB v. Law Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180–81 (2d Cir. 2023), *cert. denied*,

144 S. Ct. 2579 (2024) (declining to read "*Collins* so narrowly" as to only apply to claims for retrospective, and not prospective, relief); *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB* (*CFSA*), 51 F.4th 616, 631 (5th Cir. 2022) ("*Collins* did not rest on a distinction between prospective and retrospective relief."), *rev'd and remanded on other grounds*, 601 U.S. 416 (2024); *Leachco*, 103 F.4th at 757 (same).

Thus, *Calcutt* makes clear that to succeed on a removal restriction claim, YAPP must "show that the removal restriction *specifically* impacted the agency actions of which they complain[]" even where the relief sought is prospective. *Calcutt*, 37 F.4th at 314. YAPP has failed to do so. It simply argues that being subjected to an unconstitutional agency's proceedings is a "here and now" injury under the Supreme Court's ruling in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023). But this argument is also contrary to *Collins* and *Calcutt* and misunderstands the holding in *Axon*.

To start, *Axon* only addressed whether the petitioners, who were respondents in administrative enforcement actions before the SEC and FTC, could initially bring collateral challenges to the constitutionality of those agencies' structures in federal district court. *Axon*, 598 U.S. at 175. "To answer that strictly jurisdictional question," the Court applied the jurisdictional factors from *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), "to determine whether the constitutional claims brought by the petitioners were of the type that Congress intended to allocate exclusively to the agency, or whether those claims could be initiated in federal district court." *Leachco*, 103 F.4th at 758 (citing *Axon*, 598 U.S. at 186). The Supreme Court did not address issues of relief or injury. *Id.*

True, the Court in *Axon* referred to being subject to proceedings before an unconstitutionally structured agency as a "here-and-now injury" that is "impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 191; *see also id.* at 192 ("Axon and Cochran will lose their rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over."). But the Court made those statements in the context of determining whether the district court had jurisdiction to hear the petitioners' constitutional claims, and not in the context of the *Collins* harm requirement for unconstitutional removal claims.

On that specific question, clear Sixth Circuit and Supreme Court precedent govern. And it does not endorse YAPP's "here and now injury." In other words, to establish harm under *Collins* and *Calcutt*, YAPP would need to make a showing that because the NLRB members and ALJs are unconstitutionally shielded from removal by the President, this actually impacted, or will impact, the administrative proceedings against it—merely being subjected to a hearing before an ALJ (or Board members) protected by unconstitutional removal protections is not enough.[5] *Calcutt*,

---

[5] YAPP relies on two district court cases from the Fifth Circuit that recently issued contrary decisions. *See Energy Transfer*, 2024 WL 3571494, at *3; *Space Expl.*, 2024 WL 3512082, at *6. But both cases fail to persuasively explain why the *Collins* harm standard did not apply to the removal claims there. And this Court is more persuaded by the Tenth Circuit's reasoning in *Leachco*, which more closely comports with the Sixth Circuit ruling in *Calcutt*. *See Leachco*, 103 F.4th at 758 (finding that the *Collins* harm requirement was not met where the alleged harm was merely being subject to a hearing before an official with unconstitutional removal protections). That Court also declined to expand the jurisdictional language in *Axon* to the irreparable harm context. *Id.* at 759 ("We will follow the Supreme Court's words of caution when interpreting the same 'here-and-now injury' language from *Axon*—we will not misunderstand what was said about jurisdiction in *Axon* 'as a holding on a

37 F.4th at 317; *see also CFSA*, 51 F.4th at 632; *Collins*, 594 U.S. at 259–60. But YAPP has failed to make any showing that, but for the allegedly unconstitutional removal provisions, the Board members or ALJ would have been removed, the NLRB proceedings against it would not be occurring, or the proceedings would be different in any way.

Accordingly, because YAPP has failed to show the harm required for an unconstitutional removal restriction claim, it is not likely to succeed on the merits of this claim.

## B. Seventh Amendment

YAPP's Seventh Amendment claim that the damages being sought in the NLRB proceedings deprives it of a right to a jury trial does not fare much better. Indeed, the Court appears to lack jurisdiction to even address this claim. And YAPP's argument is contrary to the Supreme Court's holdings in *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937)*, and *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024).

### 1.

The Court begins with jurisdiction. District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. But in some circumstances "[a] special statutory review scheme . . . may preclude district courts from exercising jurisdiction over challenges to federal agency action." *Axon*, 598 U.S. at 185 (citation omitted). In such circumstances, "[t]he agency effectively fills in for the district court, with the court of

---

party's entitlement to relief based on an unconstitutional removal provision.'" (quoting *Collins*, 594 U.S. at 258 n.24)).

appeals providing judicial review," *id.*, "like the NLRA does for unfair labor practice claims," *Burnett Specialists v. Abruzzo*, No. 22-00605, 2023 WL 5660138, at *5 (E.D. Tex. Aug. 31, 2023).

To determine whether a statute prevents judicial review at the district court level, the Court engages in a two-step inquiry. *Cochran v. SEC*, 20 F.4th 194, 206 (5th Cir. 2021). The Court asks whether "a statutory scheme displays a fairly discernible intent to limit jurisdiction" and "whether the claims at issue are of the type Congress intended to be reviewed within th[e] statutory structure." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Free Enter. Fund*, 561 U.S. at 489).

Start with the first *Cochran* step. It is clear that "Congress intended that the NLRA limit [district court] jurisdiction." *See* Dismissal Order at 6, *Nexstar Media, Inc., Grp., v. NLRB*, No. 24-01415 (N.D. Ohio Aug. 26, 2024), ECF No. 17. The NLRA's statutory scheme does not allow for district court review of unfair labor practice claims—the proceedings go to the Board, and then the Board's final order is appealable to an appropriate federal court of appeals. 29 U.S.C. § 160(f). This structure indicates that the NLRA "is meant to be, and is, a comprehensive statute concerning the disposition and review of the merits of unfair labor practice charges." *NLRB v. United Food & Com. Workers Union, Loc. 23*, 484 U.S. 112, 131 (1987).

The second *Cochran* step involves determining whether the NLRA's statutory scheme covers the precise claim at issue. To do so, says the Supreme Court, this Court must consider the following:

> First, could precluding district court jurisdiction "foreclose all meaningful judicial review" of the claim? . . . Next, is the claim "wholly collateral" to the statute's review provisions? . . . And last, is the claim "outside of the agency's expertise"? When the answer to all three questions is yes, "we presume that Congress does not intend to limit jurisdiction." But the same conclusion might follow if the factors point in different directions. The ultimate question is how best to understand what Congress has done—whether the statutory review scheme, though exclusive where it applies, reaches the claim in question.

*Axon*, 598 U.S. at 186 (citations omitted).

The NLRB recently authorized its Regional Directors to seek make-whole relief for "direct or foreseeable pecuniary harm" arising from an unfair labor practice. *Thryv, Inc.*, 372 N.L.R.B. No. 22, 2022 WL 17974951, at *1 (Dec. 13, 2022). YAPP's Seventh Amendment claim rests on the possibility that a future Board order may require it to reimburse Dowling and other employees for such losses. YAPP says this constitutes compensatory and/or consequential damages that can only be awarded through a jury trial. This claim likely fails all three *Axon* subject-matter jurisdiction factors. *See* Dismissal Order at 6–10, *Nexstar*, No. 24-01415 (dismissing analogous Seventh Amendment claim for lack of jurisdiction and reasoning that NLRA intended to limit jurisdiction and all three *Axon* factors counseled against exercising jurisdiction).

First, would the absence of district court jurisdiction preclude meaningful judicial review of this claim? *Axon*, 598 U.S. at 190. YAPP's Seventh Amendment claim is a challenge to the remedies being sought in the administrative proceeding. It is not, as the NLRB points out, "a 'structural' challenge attacking the very nature of the agency." (ECF No. 24, PageID.231.) True, the Supreme Court has concluded

24

that when the plaintiffs' claim was that they were "being subjected to an illegitimate proceeding," a court of appeals could not provide meaningful review, because the harm from being subject to the illegitimate proceeding could not be undone once the proceeding happened. *Axon*, 598 U.S. at 190.

But here, YAPP would not be deprived of such meaningful judicial review.[6] If the ALJ awards the *Thyrv* remedy that YAPP contests, YAPP can raise the Seventh Amendment issue before the Board and then the Court of Appeals, which can invalidate the award of those remedies (should they find merit in the constitutional claim) without disturbing the otherwise valid administrative process—exactly as Congress intended.

Turning to the second *Axon* factor, YAPP's claim is not "wholly collateral" to the function of the NLRB. Determining what remedy is warranted for particular NLRA violations is a core aspect of the NLRB's quasi-adjudicatory and quasi-legislative functions. The Court agrees with Defendants that YAPP's claim "presents a question of 'how [the NLRB's] power [is] wielded,' not the agency's 'power generally.'" (ECF No. 24, PageID.231 (alterations in original) (quoting *Axon*, 598 U.S. at 193).) What is more, YAPP itself contends that the *Thryv* remedies at issue exceed

---

[6] YAPP appears to comingle its removal claims and Seventh Amendment claims. In its reply brief, YAPP says "preclusion of this Court's jurisdiction would foreclose all meaningful judicial review because YAPP is entitled to have its Seventh Amendment right to a trial by jury claim . . . be heard before being subjected to an illegitimate decision-maker." (*See* ECF No. 27, PageID.256 n.4 (emphasis omitted).) But YAPP's Seventh Amendment claim does not challenge the constitutional legitimacy of the ALJ or NLRB; it challenges a specific type of remedy being sought. The Court agrees with YAPP that it has jurisdiction to hear YAPP's removal claims under *Axon*—and Defendants do not appear to dispute that. (*Id.*)

the NLRB's statutory authority. Surely, determining what type of remedies are appropriate or permissible under the NLRA is not "wholly collateral" to the functioning of the NLRB.

As for the third *Axon* factor, the NLRB's power to fashion remedies has long been recognized by the Supreme Court as a core area of Board expertise. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941) ("[I]n the nature of things Congress could not . . . define the whole gamut of remedies to effectuate these policies in an infinite variety of specific situations. Congress met these difficulties by leaving the adaptation of means to end to the empiric process of administration . . . committed to the Board, subject to limited judicial review.").

Lastly, the ALJ hearing this case, or the Board on review, might determine that YAPP has not committed any unfair labor practices, or that the requested remedies are not warranted. Such statutory determinations by the agency would obviate any need to address the constitutional issue. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 22–23 (2012) (finding lack of subject matter jurisdiction where "preliminary questions unique to the employment context may obviate the need to address the constitutional challenge").

For these reasons, therefore, the Court questions whether it has jurisdiction to address YAPP's Seventh Amendment argument.

**2.**

But even if the Court does have jurisdiction, YAPP's Seventh Amendment claim is not likely to succeed on the merits.

26

Again, YAPP argues that, in seeking a make-whole remedy that includes "direct and foreseeable" damages, the NLRB is attempting to grant "private relief" in violation of the Seventh Amendment's right to a jury trial. (ECF No. 4, Page ID.65.) YAPP relies, in large measure, on the ruling in *Jarkesy*, in which the Supreme Court held that the SEC's decision to order civil penalties for securities fraud through administrative proceedings, rather than seeking them through a jury trial in federal court, violated the Seventh Amendment. *Jarkesy*, 144. S. Ct. at 2127–28. But this case involves the NLRB and not the SEC. And the Supreme Court also held in 1937 that the Seventh Amendment right to a jury trial does not attach to NLRB proceedings. *Jones & Laughlin*, 301 U.S. at 33. *Jarkesy* actually reinforces this ruling (more on this later). Additionally, the NLRB's decision to allow direct and "foreseeable damages" in *Thryv* does not alter the *Jones & Laughlin* ruling, either.

First, to implicate the Seventh Amendment, the challenged administrative proceeding must involve a statutory claim that is "legal in nature." *Jarkesy*, 144 S. Ct. at 2128 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)). This turns on an examination of the cause of action and the remedy that it provides. *Id.* at 2129. But *Jarkesy* reaffirmed that Congress could properly insulate even legal remedies from the Seventh Amendment right to a jury trial where the underlying proceeding involves "public rights." *Id.* at 2131.

And almost a century ago the Supreme Court held that the Seventh Amendment does not apply to unfair labor practice proceedings, which involve statutory rights "unknown to the common law" and which fall under the public-rights

exception. *Jones & Laughlin*, 301 U.S. at 48; *see id.* at 48–49 (explaining that "[t]he [NLRB] proceeding is one unknown to the common law" and that the Seventh Amendment "has no application to cases where recovery of money damages is an incident to equitable relief" and concluding that the Amendment was thus inapplicable to remedies "imposed for violation of the [NLRA]"); *see also Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 453–56 (1977) (discussing *Jones & Laughlin* as an example of Congress having created a public-rights scheme outside the reach of the Seventh Amendment); *Curtis v. Loether*, 415 U.S. 189, 194–95 (1974) (distinguishing the public-rights scheme at issue in *Jones & Laughlin* from other newly created statutory rights). *Jarkesy*, dealing with very different remedies awardable in an SEC proceeding, did not displace this longstanding precedent holding that NLRA unfair labor practice claims fall under the public-rights doctrine. It actually reaffirmed it. *Jarkesy*, 144 S. Ct. at 2137–38 (citing *Jones & Laughlin*, 301 U.S. at 48; *Atlas Roofing Co.*, 430 U.S. at 453). Thus, YAPP's Seventh Amendment claim would likely fail based on the public-rights exception.

YAPP's claim fails for another reason—the NLRB's *Thryv* remedies are equitable in nature and thus are distinguishable from the SEC's civil penalties at issue in *Jarkesy*. The Supreme Court in *Jarkesy* clarified that statutory claims that only provide equitable relief are not the sort of legal causes of action to which the Seventh Amendment right attaches. 144 S. Ct. at 2129 ("To determine whether a suit is legal in nature, we directed courts to consider the cause of action and the remedy it provides. Since some causes of action sound in both law and equity, we concluded

that the remedy was the 'more important' consideration." (citation omitted)). The Court observed that "monetary relief can be legal or equitable," and that a determinative question is whether the remedy is "designed to punish or deter the wrongdoer, or, on the other hand, solely 'restore the status quo.'" *Id.* (citation omitted); *accord Tull v. United States*, 481 U.S. 412, 422 (1987) (distinguishing civil penalties from equitable monetary relief "intended simply to extract compensation or restore the status quo"); *see Jones & Laughlin*, 301 U.S. at 48 (noting that the Seventh Amendment has "no application to cases where recovery of money damages is an incident to equitable relief even though damages might have been recovered in an action at law").

Recall that under *Thryv* the NLRB established that its "make-whole remedy shall expressly order respondents to compensate affected employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of [a] respondent's unfair labor practice." *See Thryv, Inc.,* 372 N.L.R.B. No. 22, 2022 WL 17974951, at *1 (Dec. 13, 2022). As explained at length in the Board's decision, this make-whole remedy, that YAPP challenges here, was designed to "restore the victim[s]" of unfair labor practices rather than to punish respondents. *Jarkesy*, 144 S. Ct. at 2129; *see also Thryv*, 2022 WL 17974951, at *17 ("[O]ur make-whole remedies do not punish bad actors, but rather implement the statutory principles of rectifying the harms actually incurred by the victims of unfair labor practices and restoring them to where they would have been but for the unlawful conduct."). Indeed, the Board declined to limit such remedies to only egregious violations of the Act to

29

avoid the risk of such remedies becoming punitive. *Thryv*, 2022 WL 17974951, at *17 ("Issuing a remedial order for such relief in all cases will permit the Board to satisfy its statutory duty to make employees whole, while ensuring that our make-whole remedy, applied equally to all respondents, is not unlawfully punitive." (citing *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 293 (1960) ("[T]he public remedy is not thereby rendered punitive, where the measure of reimbursement is compensatory only."))).

This, again, is distinguishable from the $300,000 in civil fines under the anti-fraud provisions of the relevant securities statutes that were at issue in *Jarkesy*. 144 S. Ct. at 2127. That remedy was deemed legal (rather than equitable) because the civil penalty was based on the "perceived need to punish the defendant rather than to restore the victim." *Id*. at 2129. Accordingly, *Jarkesy* confirms that the challenged remedy at issue here is not legal in nature. And thus, the Seventh Amendment does not apply.

One final note—it is questionable whether YAPP is really raising a Seventh Amendment claim. In its briefing, YAPP argues that the NLRA only permits equitable remedies, and thus, the Board exceeds its statutory authority by imposing *Thryv* make-whole remedies. (ECF No. 4, PageID.65 ("The NLRA only provides for equitable relief." (citing 29 U.S.C. § 160(c))).) This sounds more like a statutory interpretation claim than a Seventh Amendment claim. And it brings subject matter jurisdiction back into play. Congress clearly intended that deciding issues like what statutory remedies are permissible under the NLRA should be done pursuant to the

NLRA framework—i.e., raised before the NLRB in the first instance and then the Circuit Court on review. Nonetheless, given the applicability of the public-rights exception, and the Court's finding that the *Thryv* remedies are equitable in nature, YAPP has failed to show a likelihood of success on the merits of a Seventh Amendment claim.

### C. Separation of Powers

YAPP's final claim is somewhat difficult to discern—it appears to merely restate its Seventh Amendment claim under the guise of a separation of powers or combination of functions title. (*See id.* at PageID.69.) Specifically, YAPP says the NLRB usurps the power of the judiciary by adjudicating private rights when it seeks *Thryv*-type remedies. (*Id.*) YAPP also takes issue with the NLRB's decision to engage in policy-making through adjudication rather than rulemaking, as it did in *Thryv*. (*Id.*) Longstanding Supreme Court precedent, however, makes clear that the Board is not precluded from engaging in policy-making through adjudicative proceedings. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) ("[T]he Board is not precluded from announcing new principles in an adjudicative proceeding and . . . the choice between rulemaking and adjudication lies in the first instance within the Board's discretion.").

In any event, for the same reasons stated in the Court's Seventh Amendment analysis, this claim is not likely to succeed on the merits.

### D.

In sum, YAPP is not likely to succeed on the merits that it is about to be subject to an unconstitutional proceeding. The removal restrictions applicable to the NLRB

31

members and to NLRB ALJs appear to be constitutionally valid. Even if they were not, YAPP has failed to demonstrate the requisite harm. With respect to YAPP's Seventh Amendment claim, it is questionable whether the Court has jurisdiction to consider it and, even if so, a jury trial is not warranted. And YAPP's separation of powers claim seems to be indistinguishable from its Seventh Amendment claim. Thus, YAPP is not entitled to a preliminary injunction.

## IV. Irreparable Harm

YAPP's motion fails for another reason—it has not established the requisite irreparable harm necessary to justify a preliminary injunction.

This issue overlaps with the merits analysis and has basically been covered. To summarize, YAPP's only theory of irreparable harm on its removal claims is its alleged "here and now" injury of being subjected to an administrative proceeding carried out by an unconstitutionally structured agency. The Court has already found that YAPP has "failed to show under prevailing law that its mere subjection to administrative proceedings before an agency whose officials possess unconstitutional removal protections, alone, constitutes irreparable harm." *Leachco*, 103 F.4th at 753. Indeed, "while violations of certain individual constitutional rights, without more, can constitute irreparable harm, violations of the Constitution's separation of powers provisions do not." *Id.* And under current Supreme Court precedent, succeeding in a constitutional challenge to an agency official's removal protections is not sufficient, by itself, to warrant relief from proceedings before that agency official. *See Collins*, 141 S. Ct. at 1788–89. Instead, the movant must show that the unconstitutional

removal protections made a difference in its case. *See Calcutt*, 37 F.4th at 317. YAPP has failed to make that showing here. *See Leachco*, 103 F.4th at 753.

YAPP also fails to show irreparable harm on its Seventh Amendment claim. As the Defendants point out, it is possible that the ALJ, or NLRB on review, never reach the issue of *Thryv* remedies or find them inappropriate here. And merely being subject to a proceeding before an ALJ where a particular remedy sought is allegedly unconstitutional or not statutorily permissible does not leave YAPP without a remedy. Any damage award ultimately imposed at the administrative level is not effective until enforced by a federal court of appeals. Stated differently, under the NLRA, Board orders are not self-executing; the Board must seek an order from the court of appeals to execute its orders. *See* 29 U.S.C. § 160(e); *see also Mitchellace, Inc. v. NLRB*, 90 F.3d 1150, 1159 (6th Cir. 1996) ("An NLRB remedial order is not self-executing, and the respondent can violate it with impunity until a court of appeals issues an order enforcing it."). And YAPP is entitled to judicial review of any final Board order. *See* 29 U.S.C. § 160(f). Thus, YAPP would have the opportunity to challenge any such hypothetical remedial award in the Circuit Court. Indeed, the Court is aware of at least one pending case where the same challenges to the NLRB's award of *Thryv* remedies are currently pending in an appeal from a final Board order. *See* Pet. for Review, *Macy's Inc. v. NLRB*, No. 23-150 (9th Cir. Feb. 2, 2023), ECF No. 1. Finally, the remedy YAPP seeks is broader than the claim it makes. At most, the appropriate relief would be a preliminary injunction prohibiting the NLRB from

seeking *Thryv*-type remedies in YAPP's administrative proceeding, not halting the entire administrative process.

## V.

For these reasons, YAPP is not entitled to the extraordinary relief of preliminarily enjoining the September 10, 2024, administrative hearing before an 89-year-old executive branch agency. YAPP's motion for a preliminary injunction (ECF No. 4) is DENIED.

IT IS SO ORDERED.

Dated: September 9, 2024

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE