# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| YAPP USA AUTOMOTIVE SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, JENNIFER ABRUZZO, LAUREN McFERRAN, MARVIN E. KAPLAN, GWYNNE A. WILCOX, DAVID M. PROUTY, and ARTHUR AMCHAN, <br><br> Defendants. | Case No. 24-12173 <br> Honorable Laurie J. Michelson |

## NATIONAL LABOR RELATIONS BOARD'S MOTION FOR RECONSIDERATION OF INJUNCTION PENDING APPEAL

## STATEMENT OF ISSUES PRESENTED

I. Are Defendants entitled to reconsideration of the Court's decision to issue what it described as a stay pending appeal despite Plaintiff's failure to establish either a likelihood of success on the merits or irreparable harm?

II. Are Defendants entitled to reconsideration of the Court's decision to issue what it described as a stay pending appeal based on the Court's error in concluding that there was no significant harm to Defendants from delaying the underlying administrative hearing and failing to consider the public interest?

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

The following is the most controlling authority for the relief sought:

- Local Rule 7.1(h)(2), which establishes that a motion for reconsideration of a non-final order may be brought on the following grounds: "(A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision; (B) An intervening change in controlling law warrants a different outcome; or (C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision."

- *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 572 (6th Cir. 2002), in which the 6th Circuit held that assessing a request for an injunction pending appeal requires a court to engage in the same analysis as it does in reviewing the grant or denial of a motion for a preliminary injunction.

- *YAPP USA Automotive Systems, Inc. v. NLRB*, 24-12173 (E.D. Mich. Sept. 9, 2024), ECF No. 29, in which this Court held that Plaintiff here had not met the high bar for obtaining a preliminary injunction based on detailed findings that Plaintiff did not demonstrate any likelihood of success on the merits or any irreparable harm.

## INTRODUCTION

Yesterday, on September 9, 2024, this Court issued a comprehensive Opinion and Order [ECF No. 29] finding that Plaintiff YAPP USA Automotive Systems, Inc. ("YAPP") had failed to meet the high bar of demonstrating its entitlement to a preliminary injunction barring the National Labor Relations Board ("NLRB" or "Board") from conducting an administrative hearing. Pursuant to a notice of hearing that initially issued to YAPP on April 9, 2024, that hearing was scheduled to begin today, September 10, 2024.

The Court's Opinion contains a detailed review of the likelihood of success on the merits on all four of YAPP's constitutional claims—specifically, the constitutionality of statutory removal restrictions for Board members and the NLRB's administrative law judges (ALJs); a Seventh Amendment claim; and an argument about due process and the purportedly unlawful combination of agency functions. The Court did not mince words, finding unequivocally that "YAPP is not likely to succeed on the merits that it is about to be subject to an unconstitutional proceeding." ECF No. 29, PageID.335. The Court systematically pointed out myriad flaws in YAPP's constitutional claims, including YAPP's failures to demonstrate: that removal protections for either NLRB Board members or ALJs are unconstitutional, *id.* PageID.313–22; its required showing of causal harm to succeed on removal claims, *id.*, PageID.322–26; the existence of district court jurisdiction for YAPP's Seventh Amendment claim, *id.*, PageID.326–30; that controlling law did not foreclose YAPP's

1

Seventh Amendment claim, which actually may be a disguised statutory claim, from future judicial review, *id.*, PageID.330–35; and finally, any merit to what this Court described as YAPP's "difficult to discern" combination of functions claim, *id.*, PageID.335.

The Court further held that "YAPP's motion fails for another reason—it has not established the requisite irreparable harm necessary to justify a preliminary injunction." *Id.*, PageID.336. Following the Tenth Circuit's reasoning in a similar case, the Court properly rejected YAPP's argument that "mere subjection to administrative proceedings before an agency whose officials possess unconstitutional removal protections, alone, constitutes irreparable harm." *Id.*, PageID.336 (citing *Leachco Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 753 (10th Cir. 2024), *petition for cert. filed*, No. 24-156 (Aug. 9, 2024)).

In sum, YAPP failed to carry its burden on the preliminary-injunction factors as to practically every single issue raised by its request for relief. Although this Court addressed two of the preliminary injunction factors, it did not address the merged public interest and balance of the equities factors.

Immediately after this Court's Opinion issued, YAPP filed a notice of appeal to the Sixth Circuit [ECF No. 30], followed closely by a Motion for Stay Pending Appeal [ECF No. 31]. In essence, YAPP's Motion asked this Court to give it the same relief—an order enjoining the administrative hearing—that the Court had just held legally unjustified and inappropriate based on YAPP's inadequate showing on merits

2

and irreparable harm.[1] The Board filed an Opposition urging the Court to deny the Motion for the same reasons articulated in its Opinion, as "there [was] no reason for this Court to rule differently on the instant motion." ECF No. 33, PageID.356.

The Court responded in a brief Order [ECF No. 34], in which it granted YAPP's request for a stay pending appeal and enjoined the unfair-labor-practice hearing, noting that:

> [C]onflicting opinions have been issued on the claims raised in the motion and others remain pending. And while the Sixth Circuit has addressed some similar issues in *Calcutt v. FDIC*, 37 F.4th 293, 313 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023), it has not done so in connection with the NLRB. Additionally, the Court does not discern any significant harm to the Defendants from further delaying the September 10, 2024, administrative hearing pending a decision on YAPP's appeal.

ECF No. 34, PageID.366–67.

The Board respectfully moves for reconsideration on two grounds. First, the Court erred by granting a stay pending appeal after holding that YAPP had failed to demonstrate either a likelihood of success on the merits or irreparable harm. Second, the Court erred by overlooking the significant harm an injunction pending appeal inflicts on the public, the Board itself, and the discharged employee seeking to

---

[1] Specifically, YAPP's Motion asked the Court to "enjoin the NLRB proceedings until YAPP's appeal is resolved. In the alternative, YAPP requests an injunction of the NLRB proceedings until such time as the Sixth Circuit can address YAPP's emergency motion for stay and injunction pending appeal." ECF No. 31, PageID.352. In actuality, this Court granted an injunction of the Board's proceeding, rather than a stay, because it changed the status quo ante.

3

exercise the only option available to vindicate his rights under the National Labor Relations Act (NLRA or Act), 29 U.S.C. § 151 *et seq.*

Pursuant to Local Rule 7.1, the NLRB sought concurrence on this motion, and YAPP opposes.

## LEGAL STANDARD

Though disfavored, under Local Rule 7.1(h)(2)(A), motions for reconsideration of a non-final order may be brought on the ground that "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision."

## ARGUMENT

**I. The District Court erred in awarding YAPP a stay pending appeal despite holding that YAPP had not demonstrated a likelihood of success on the merits or irreparable harm.**

An injunction pending appeal is designed "to prevent irreparable harm to the party requesting such relief during the pendency of the appeal." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 572 (6th Cir. 2002). "In granting such an injunction, the Court is to engage in *the same analysis* that it does in reviewing the grant or denial of a motion for a preliminary injunction." *Id.* (citing to *Walker v. Lockhart*, 678 F.2d 68, 70 (8th Cir. 1982) for proposition that "the same analysis is appropriate because, in seeking both motions, the movant is requesting that the court issue an order to maintain the status quo until the court rules on the merits of the case") (emphasis added); *compare with* ECF No. 34, PageID.366 ("The Court is aware that the

4

standard for addressing the stay request *is similar to* the standard used in ruling on the underlying motion.") (emphasis added). In this case, the Court recognized an injunction "is an extraordinary and drastic remedy that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." ECF No. 29, PageID.312. Importantly, the factors of likelihood of success and irreparable harm weigh most heavily. *Nken v. Holder*, 556 U.S. 418, 434 (2009). And ultimately, "the demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction." *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

The Court's Order granting a stay pending appeal is in conflict with those bedrock principles. "A district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury to the party seeking the injunction." *Friendship Materials*, 679 F.2d at 105. Simply put, because this Court already held that YAPP failed to make out the irreparable-harm showing required to award an injunction, its subsequent issuance of YAPP's requested injunction as a stay pending appeal was erroneous. As this Court recognized, YAPP failed to demonstrate that any of its claims are likely to succeed, which the Sixth Circuit describes as "the determinative factor" in cases alleging constitutional violations. *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

Even if the Court concluded that the "conflicting opinions" noted in its September 9 Order created "serious questions going to the merits and irreparable

5

harm," *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002), the Court would still have to find that those questions "decidedly outweigh[] the harm that will be inflicted on others if a stay is granted."[2] *Id.* As discussed below, the Court further erred in finding that no harm is inflicted by enjoining pending appeal the unfair-labor-practice hearing. And in any event, the Court's original opinion is thorough and properly supported by binding precedent from the Supreme Court and the Sixth Circuit, plus the great weight of out-of-circuit precedent, which also accords with this Court's findings.

## II. Significant harm results from further delaying the September 10, 2024 administrative hearing.

As an initial matter, in enjoining the Board's administrative proceeding against YAPP, the Court did not address the Board's substantial showing that the public interest and the balance of the equities severely disfavor an injunction. ECF No. 24, PageID.242–43. While the Board will not repeat those arguments here, it respectfully asks the Court to reconsider its statement that it "does not discern any significant harm to the Defendants from further delaying the September 10, 2024, administrative

---

[2] Last year, the District of Connecticut considered a similar request for a preliminary injunction based in part on an allegation that removal protections for NLRB ALJs are unconstitutional. *See Care One, LLC v. NLRB*, 3:23-cv-00831(RNC), 2023 WL 6457641 (D. Conn. Oct. 4, 2023), *appeal docketed*, No. 23-7475 (2d Cir. Oct. 20, 2023). That Court, too, noted the existence of a circuit split on this issue. *See id.* at *4. But the District of Connecticut properly saw this as reason to deny an injunction, not to grant one. *Id.*

6

hearing pending a decision on YAPP's appeal." ECF No. 34, PageID.367. That conclusion is belied by fact and law.

The harmful effect of halting the enforcement of duly enacted laws should not be understated. This is particularly true where the law at issue effectuates what the Supreme Court recognizes to be a "fundamental right" of employees—the right to choose whether or not "to bargain collectively through representatives of their own choosing," *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33 (1937) (quoting 29 U.S.C. § 157), and to make this choice "without restraint or coercion by their employer," *id.* It warrants mention here that the law YAPP challenges, the NLRA, was enacted in 1935 to pull the country out of the Great Depression, and withstood forceful attacks on its constitutionality at that time, not unlike the challenges YAPP brings here. *See id.* at 47 (rejecting employer's Seventh Amendment challenge to the NLRA); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938); *see also Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 442 (2024) (four-Justice concurrence) ("Long settled and established practice may have great weight in interpreting constitutional provisions about the operation of government," and a relevant consideration for courts is "[t]he way our Government has actually worked, over our entire experience . . . .") (cleaned up).

Simply put, interfering with the enforcement of the NLRA, a law "enacted by representatives of [the] people" is a "form of irreparable injury" to the public. *See, e.g., Tex. All. for Ret. Ams. v. Hughs*, 976 F.3d 564, 569 (5th Cir. 2020). And that injury—

7

bad enough on its own—is likely to be compounded as a result of this Court's stay ruling. Other respondents to NLRB proceedings will be incentivized to seek injunctions from this and other courts because they now know that they may be able to obtain one pending appeal without having to show a likelihood of success on the merits or even irreparable harm. *See* ECF No. 23, PageID.196 (discussing the broad effect even temporary injunctions can have on NLRB operations); ECF No. 24, PageID.243 (same). This is a compelling consideration, relevant to the equities and interests at stake, that should not be disregarded.

Nor did the Court properly take stock of the reality that any emergency pressing on YAPP was largely self-created. *See* ECF No. 24, PageID.241 (explaining that YAPP waited over four months after the initial administrative hearing was scheduled to request an emergency preliminary injunction, leaving just 22 days for the NLRB to respond and the Court to issue a decision). That kind of unjustified delay and procedural maneuvering by a party—whereby it stalls to gain an unfair advantage and to create unnecessary pressures, in the process taxing the court's limited resources—sharply undermines the credibility of its claimed need for an extraordinary and drastic remedy like halting the Board's proceedings. When it comes to equities and considerations of harm, gamesmanship also should not be overlooked.

To be sure, YAPP's Motion for Stay criticizes the Board for "[taking] nearly 16 months from the start of its investigation until the issuance of the consolidated complaint." ECF No. 31, PageID.352. But this of course ignores the time it takes to

8

conduct a proper administrative investigation, which here, included a series of allegations contained in separate charges filed on June 21, 2023, September 29, 2023, and February 2, 2024. The Board has acted with all deliberate speed to administratively process the multiple claims that YAPP has violated the NLRA. To the extent that YAPP highlights the passage of time since the alleged unfair-labor-practices occurred, all that fact reveals is a need to avoid further delay now, with the hearing ready to begin.

Of critical importance, YAPP's unfair-labor-practice case is one with statutory priority under the NLRA because it involves a terminated employee, *see generally* Compl., ECF No. 1, PageID.4–7, ¶¶ 19–31, who may be entitled to reinstatement under the express provisions of Section 10(c) of the NLRA. 29 U.S.C. § 160(c) (authorizing the Board to issue an order, upon finding that a person has engaged in or is engaging in any unfair labor practice, requiring "such person to cease and desist from such unfair labor practice, and to take such affirmative action *including reinstatement of employees*") (emphasis added). The administrative complaint alleges that YAPP's termination of this employee was discriminatory and violated Section 8(a)(3) of the Act, 29 USC 158(a)(3). NLRB Consolidated Compl. and Notice of Hearing, ECF No. 4-2, PageID.104–05, 107, ¶¶ 15, 16, 19. In the case of a discharged employee, the passage of time plainly matters—that is why Congress added Section 10(m) into the Act, "providing that the Board should give discriminatory unfair labor practice claims arising under § 8(a)(3) priority over all other cases except secondary

9

boycotts." *Hammontree v. NLRB*, 925 F.2d 1486, 1511 (D.C. Cir. 1991) (en banc) (Mikva, J., dissenting) ("§ 10(m) was intended to redress the problem of the individual employee who loses his job or wages as a result of discriminatory behavior" and to deter "delays [in] hearing such cases"). The Board's regulations accord this same priority to discrimination cases, providing at 29 C.F.R. § 102.97, that any complaint in such a case "will be heard expeditiously and the case will be given priority in its successive steps following its issuance (until ultimate enforcement or dismissal by the appropriate circuit court of appeals) over all cases," except in rare circumstances.

When it comes to discharged employees, unduly delaying potential issuance of a Board remedial order poses real harm. If a final Board reinstatement order comes too late, the chill experienced by the employer's remaining workforce may not be successfully remedied, or the employer may profit from its own unfair labor practice if economic necessity forces discharged employees to take other jobs and decline reinstatement. *See Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 230–31, 239 (6th Cir. 2003); *Pascarell v. Vibra Screw Inc.*, 904 F.2d 874, 878, 881–82 (3d Cir. 1990); *Eisenberg v. Wellington Hall Nursing Home, Inc.*, 651 F.2d 902, 905–07 (3d Cir. 1981). So while YAPP may benefit from having the enforcement of the NLRA halted, others bear the often hidden cost.

Furthermore, the Supreme Court explained long ago that the Board's proceedings are "not for the adjudication of private rights," but for the effectuation of "the declared public policy of the Act to eliminate and prevent obstructions in

10

interstate commerce," that is, "by protecting the exercise by workers of full freedom of association." *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 362–63 (1940) (cleaned up). In other words, it is not just the alleged discriminatee in the unfair-labor-practice case who has something to lose from an injunction of the administrative hearing. What hang in the balance, too, are the rights of the discharged employee's former colleagues.

For many years, federal courts have recognized that cases involving allegations like those at issue here—terminations and other illegal interference with NLRA rights—can (and often do) have a grave and negative impact on the exercise of NLRA rights in the workplace. Those who are undecided about union organizing or exercising their NLRA rights feel these effects acutely, as they will often restrain themselves from exercising their statutory rights for fear of losing their jobs. *See, e.g.*, *Schaub v. W. Mich. Plumbing & Heating, Inc.*, 250 F.3d 962, 971 (6th Cir. 2001) (explaining, *inter alia*, that discrimination in employment affects "other employees who might have been interested in learning more about the potential benefits of joining a union" because they "will be discouraged from doing so"; those "employees are not guaranteed the right to engage in union activities without the threat of discrimination until after the Board has finally resolved this matter"); *Abbey's Transp. Servs., Inc. v. NLRB*, 837 F.2d 575, 576 (2d Cir. 1988) ("Employees are certain to be discouraged from supporting a union if they reasonably believe it will cost them their jobs."); *NLRB v. Jamaica Towing, Inc.*, 632 F.2d 208, 212–13 (2d Cir. 1980) (discharge of union

11

adherents may reasonably "remain in [employees'] memories for a long period"); *Silverman v. Whittal & Shon, Inc.*, 125 LRRM 2150, 1986 WL 15735, at *1 (S.D.N.Y. 1986) (noting certain unfair labor practices create an environment where "no other worker in his right mind would participate in a union campaign"). As the Fifth Circuit has recognized, "[p]ractices may live on in the lore of the shop and continue to repress employee sentiment long after most, or even all, original participants have departed." *Bandag, Inc. v. NLRB*, 583 F.2d 765, 772 (5th Cir. 1978). And the longer these practices continue unabated, the deeper and more entrenched such repression grows. These considerations cut sharply in favor of the Board's proceedings continuing without unjustified delay.

Finally, there is substantial harm to the Board itself. Delay to the administrative hearing will impair witnesses' ability to recall important details during testimony and harm NLRB attorneys' ability to make an effective case at trial on behalf of the employees who were victims of the alleged unfair labor practices. There are also costs to the Agency in the form of duplicative hours NLRB attorneys will have to spend preparing for trial once the stay is lifted, having already spent numerous such hours preparing for a trial that was supposed to begin today. Those duplicative hours could have been spent performing other mission-critical work on behalf of the public. The Agency also incurs court reporter cancellation fees and travel costs that preceded the court's issuance of a stay as the trial was about to commence.

Given the substantial disruption to the Agency, and for the reasons discussed above, reconsideration is warranted, and YAPP's request for a stay of the administrative hearing pending appeal should be denied. This Court should not have given YAPP the full scope of the relief it requested in its motion for a preliminary injunction, when YAPP failed to meet its burden as a matter of law. But, should the Court decline to rescind its Order granting YAPP's Motion to Stay, the Board alternatively requests that the Court issue an order modifying the duration of the stay, so that it lasts only until 5:00 p.m. the day following modification of the stay order. This would appropriately place the burden on YAPP to seek an injunction pending appeal from the Sixth Circuit, something it had already sought at the time this Court issued the stay order. And it would allow the NLRB to quickly resume the now-enjoined hearing should YAPP fail to convince the court of appeals—as it failed to convince this Court—of its need for emergency injunctive relief.

## CONCLUSION

In conclusion, the NLRB ask that the Court reconsider its order granting a stay and injunction pending appeal.

|  | Respectfully submitted, |
|---|---|
| KEVIN P. FLANAGAN<br>*Deputy Assistant General Counsel* | /s/ Michael Dale<br>MICHAEL S. DALE<br>*Trial Attorney* (DC Bar No. 1658811) |
| CHRISTINE FLACK<br>*Supervisory Attorney* | Tel: (202) 273-0008<br>Facsimile: (202) 273-4244<br>Email: michael.dale@nlrb.gov |
| STEVE BIESZCZAT<br>*Trial Attorney* | NATIONAL LABOR RELATIONS BOARD<br>*Contempt, Compliance, and Special Litigation Branch*<br>1015 Half Street, S.E. - 4th Floor |
| Dated: September 10, 2024 | Washington, DC 20003 |

14

## CERTIFICATE OF SERVICE

  I hereby certify that on September 10, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

/s/ Michael Dale
MICHAEL S. DALE
*Trial Attorney*
DC Bar No. 1658811
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-0008
Email: michael.dale@nlrb.gov

Dated this 10th day of September, 2024.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| YAPP USA AUTOMOTIVE SYSTEMS, INC., <br><br> Plaintiff(s), <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, et al., <br><br> Defendant(s). | Case No. 24-12173 <br> Honorable Laurie J. Michelson |

**BRIEF FORMAT CERTIFICATION FORM**

I, Michael S. Dale, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

/s/ Michael Dale
Dated: September 10, 2024